```
                      UNITED STATES DISTRICT COURT

                        DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :    CRIM. NO. 3:02CR00004 (AWT)
                               :
       v.                      :
                               :
                               :
JOSE TIRADO                    :    FEBRUARY 6, 2006
```

**THE GOVERNMENT'S SENTENCING MEMORANDUM**

On August 3, 2005, the defendant, Jose Tirado, pled guilty to a single count of use of a telephone to facilitate a drug trafficking felony in violation of 21 U.S.C. Section 843(b). This Court is scheduled to sentence the defendant on February 9, 2006.

**I. The Factual Background**

In December 2001, the United States Drug Enforcement Administration conducted a wiretap investigation of a cocaine trafficking ring operating in New Britain, Connecticut that was headed by Luis Santiago, Jose Tirado's co-defendant. Tirado was an associate of Santiago's and, on December 16, 2001, Tirado was intercepted over Santiago's phone discussing with Santiago the quality of cocaine they had been provided in preparation for redistribution of that cocaine.

More specifically, on December 7, 2001, Tirado and Santiago had a conversation over the phone in which they discuss in coded

language the acquisition of 100 grams of cocaine.  Again, on December 13, 2001, at approximately 6:08p.m., Tirado and Santiago had a telephone conversation in which it appears that Tirado reports to Santiago that he spoke to a cocaine source of supply. During the conversation, in coded language, Santiago appears to ask Tirado to check on the price for 100 grams of cocaine.

   Three days later, on December 16, 2001, at approximately 1:00p.m., Tirado and Santiago discussed the quality of a portion of cocaine that Santiago received from a source of supply and that he gave to Tirado for purposes of testing the quality of the product.  During the conversation, Tirado told Santiago that he examined the cocaine and that he believes it to be of poor quality.  In subsequent telephone conversations the same day, Tirado repeated his concerns to Santiago.  In response, Santiago insisted that his source would not provide him with poor product. In a conversation later that same day at approximately 5:24p.m., Santiago told Tirado that he may not know what he is doing, that Santiago would obtain the cocaine and test the product himself. Based on coded references used during the conversation, Tirado and Santiago appear to be discussing a quantity of between 100 to 200 grams of powder cocaine.  In a final conversation that same day at approximately, 6:54p.m., Santiago confirmed to Tirado that he tested the product and that the product was acceptable.  From this conversation, it appears that Santiago, in fact, retrieved

the cocaine from Tirado.  Again, coded references during this conversation suggest that Santiago and Tirado are discussing a quantity of between 100 to 200 grams of cocaine, a redistribution quantity.

## II.  The Sentencing Guidelines Calculation

As set forth in the pre-sentence report, the defendant's base offense level is 18 based on the stipulated quantity of at least 100 grams but less than 200 grams of cocaine.  Subtracting 3 levels for acceptance of responsibility, the defendant's total adjusted offense level is 15.

The more critical issue is whether the defendant qualifies for treatment as a career offender.[1]  If so, then his criminal history category is VI and his guidelines imprisonment range is 41-48 months.  This determination depends entirely upon whether the defendant's convictions on September 25, 1991 in the Connecticut Superior Court for sale of narcotics and assault in the second degree are separate for career offender purposes or whether they are related cases that do not count separately.  *See*

---

[1] One preliminary point deserves mention.  The Government notes that it had always been anticipated by the parties that there was a possibility that defendant could be deemed a career offender.  This was a substantial factor, among others, in the disposition of this matter by way of a telephone count under 21 U.S.C. Section 843(b).  Moreover, the parties' understanding that defendant was potentially subject to the statutory maximum sentence of 48 months as a guidelines sentence is demonstrated by the fact that, as part of the plea bargain, the Government sought and received from the defendant an appellate waiver as long as the sentence imposed by the Court does not exceed 48 months.

U.S.S.G. §4B1.2©.  The defendant argues that these convictions should be considered related because they were not separated by an intervening arrest.  *See Defendant's Objections to Paragraphs 25 and 26 of the Pre-sentence Report*, dated January 27, 2006.  "...[W]hether an intervening arrest is present constitutes a threshold question that, if answered, in the affirmative precludes any further inquiry."  *United States v. Boonphakdee*, 40 F.3d 538, 544 (2d Cir. 1994).  However, if there is no intervening arrest, as is the case here, the relatedness inquiry does not end there.  Rather, the court must undertake a fact-intensive determination of whether the prior sentences resulted from offenses that occurred on the same occasion, were part of a single common scheme or plan, or were consolidated for trial or sentencing.  *See* U.S.S.G. §4A1.2(a)(2), Application Note 3.

Based on the underlying facts of these two convictions that are set forth in the pre-sentence report, the offenses did not occur on the same occasion.  The sale of narcotics charge arose out of a controlled purchase of cocaine from the defendant on April 11, 1991.  The assault charge arose out of the defendant's firing of a shotgun into the door of a car operated by the complaining witness on May 27, 1991.  As these offenses are temporally distinct, they certainly cannot be deemed to have occurred on the "same occasion."

Nor has the defendant proffered any evidence that these

offenses were part of a common scheme or plan. *See United States v. Butler*, 970 F.2d 1017, 1026-1027 (2d Cir. 1992)(holding that defendant bears the burden of proving that multiple convictions are part of a common scheme or plan sufficient to defeat career offender classification). Here, the controlled purchase of cocaine that occurred nearly two months earlier between a CI and the defendant does not appear to bear any relationship to the shotgun incident that arose out of an argument that escalated into violence. Indeed, the only reason that the arrests for these two incidents occurred on the same date appears to be that the defendant was booked on the arrest warrant stemming from the controlled drug purchase immediately following his arrest for the shotgun assault.

Finally, there is insufficient evidence to conclude that the narcotics charge and the assault charge were consolidated for sentencing. The defendant argues and the Government acknowledges that the sentences for the two convictions were imposed in the same court on the same date. *See Defendant's Objections to Paragraphs 25 and 26 of Pre-Sentence Report*, dated January 27, 2006. The Government also recognizes that the sentence on the assault charge was imposed to run concurrently with the lengthier sentence on the narcotics trafficking charge. These facts alone, however, do not support a relatedness finding. "...[Cases] are not deemed consolidated simply because the defendant received

concurrent sentences even when the concurrent sentences are imposed on the same day." *United States v. Gelzer*, 50 F.3d 1133, 1143 (2d Cir. 1995)(internal citation omitted); *see also United States v. Patasnik*, 89 F.3d 63, 74 (2d Cir. 1996)(holding that three convictions for writing bad checks were not related where the underlying offenses occurred on different dates, the victims were different and there was no evidence of an order of consolidation); *United States v. Aubrey*, 986 F.2d 14, 14-15 (2d Cir. 1993)(prior sentences were unrelated even though imposed pursuant to a single plea bargain); *United States v. Lopez*, 961 F.2d 384, 386-387 (2d Cir. 1992)("imposition of concurrent sentences at the same time by the same judge does not establish the cases were consolidated for sentencing...unless there exists a close factual relationship between the underlying convictions").

Several other circuit courts of appeal also agree that there must be some greater indicia of relatedness than mere sentencing at the same time. *See e.g. U.S. v. Correa*, 114 F.3d 314, 317 (1st Cir. 1997)("offenses that are temporally and factually distinct...should not be regarded as having been consolidated...unless the original sentencing court entered an actual order of consolidation or there is some other persuasive indicium of formal consolidation apparent on the face of the record"); *Green v. United States*, 65 F.3d 546, 548-549 (6th Cir.

1995)("cases are not consolidated for sentencing when they proceed to sentencing under separate docket numbers, do not arise from the same nucleus of facts, lack an order of consolidation and result in different sentences.  This is true even when the defendant pleads guilty to the offenses in the same court, at the same time, before the same judge."); *United States v. Klein*, 13 F.3d 1182, 1185 (8th Cir. 1994)(prior sentences imposed at the same time were not related where each had separate docket numbers, they were factually distinct and there was no formal consolidation order).

   In light of the criteria set forth above, there is no basis for finding that the prior convictions at issue here were consolidated.  There is no evidence of any formal order of consolidation.  Moreover, the underlying convictions did not arise from the same group of operative facts.  One incident involved a controlled narcotics purchase involving a confidential informant; the other involved a wholly different victim of a shotgun assault.  The two incidents took place approximately two months apart.  Based on the information contained in the pre-sentence report, both cases proceeded to sentencing under different docket numbers.  Not only is formal consolidation rare in the Connecticut courts, it certainly would not be likely where cases do not share a close factual relationship as is the case here.  While the cases may have been disposed of on the same date

for the sake of efficiency, this alone does not amount to formal consolidation.  In short, there is no basis for a finding that the assault conviction and the sale of narcotics conviction were consolidated for sentencing such that they can be deemed related.  Accordingly, the defendant is appropriately deemed a career offender based on these two qualifying convictions and his guidelines range is 41-48 months.[2]

### III. Sentencing in the Wake of *Booker*.

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines effectively advisory.  This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction.  The sentence is subject to appellate review for

---

[2] The high end of the guidelines range for an offense level of 15 and Criminal History Category VI would be capped at 48 months, the statutory maximum penalty for the instant offense of conviction.

reasonableness.

The Court of Appeals for the Second Circuit has offered some initial guidance to sentencing courts on how to proceed with sentencings in the wake of *Booker*. In *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Court summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). ***Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,*** or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. ***Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.*** Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*Id.* at 113 (emphasis added).

In other words, a sentencing now involves two analytic stages: first, a determination of the applicable Guideline range (including any departures)[3]; and second, a determination of whether in light of the Guidelines and the other factors listed in § 3553(a), there is any reason to impose a non-Guidelines sentence.

---

[3] The defendant is prohibited by the terms of the plea agreement from seeking any departures or other adjustments to the guidelines calculation.

**IV. The Appropriate Sentence for this Defendant**

There is no question that the defendant has a serious criminal history.  Not only did he sell narcotics on a prior occasion, but his leveling of and firing a shotgun at the occupant of another car demonstrated a callous indifference to violence that is alarming.  These incidents followed prior convictions for possession of narcotics and reckless endangerment.  At first glance, one may be tempted to write the assault and sale of narcotics convictions off as fairly remote in time since they occurred in 1991.  However, it is important to remember that the conduct at the heart of the instant conviction occurred only three years after defendant was released from a lengthy prison term for the 1991 convictions that qualify him as a career offender.  At the time of his release at the end of 1997, defendant had served approximately 6 years in prison and was 28 years old.  One would have expected that such a severe punishment would have served as a catalyst for the defendant to become a responsible citizen.  Obviously, it did not.  Rather, as illustrated by the offense conduct set forth in the pre-sentence report, the defendant eventually found himself once again in the drug trade.  As the summarized calls in the pre-sentence report indicate, the defendant's involvement was not accidental.  He called a supplier on Luis Santiago's request, he tested the quality of cocaine that was intended to be re-distributed and he provided the cocaine to

Santiago for further inspection.  In total, the calls are far more indicative that defendant was a part of Santiago's team than that this was merely an isolated occurrence.  Indeed, had the defendant been arrested immediately at the conclusion of the wiretap in 2001, there would be, in the Government's opinion, very little to ponder with respect to this sentencing.  The defendant rightfully would have merited the most severe treatment possible.

What gives the Government some pause here is the manner in which the defendant has conducted himself between 2001 and the present.  Although he, by his own admission, used drugs during that period, he also held steady employment, does not appear to have engaged in any further serious criminal conduct, has kept current with his child support payments, acted responsibly towards the family members who have housed him, has been giving his children care and love and has taken drug treatment seriously and has been successful in that treatment.  Presumably, since defendant claims not to have known about the pending warrant in Connecticut arising out of the wiretap investigation, this responsible behavior was at his own initiative.  In short, the defendant has shown that it is never too late to put oneself on the right track and that he has the potential to be productive. Very often, the Government is confronted with narcotics defendants who with their consistent repeat involvement in the drug world and by their attitudes even when confronted by the judicial system, appear to be unsalvageable.  The defendant has shown the opposite.

That having been said, the only reason the defendant was even in the position to show his potential to be productive was because of the nearly four year delay in his arrest that was brought about by a wholly fortuitous set of circumstances. The defendant was initially indicted and an arrest warrant processed under the wrong name. By the time the error was corrected by the Government, the defendant had already moved to Florida. The Government did not know his whereabouts. The defendant claims not to have known that he had a pending warrant. While the Government may be skeptical of this assertion in light of the fact that several of the defendant's associates, including Santiago, were arrested at the conclusion of the wiretap, the Government does not have any concrete evidence to contradict the defendant's claim in this regard and must give the defendant the benefit of the doubt. In essence, on account of the circumstances that occurred, the defendant received an opportunity to rehabilitate himself following the issuance of an arrest warrant. It is the rare defendant who gets such an opportunity. Rarer still is the defendant who makes the most out of the opportunity rather than viewing the failure of the Government to effectuate an arrest as a free pass to continue in a criminal enterprise. In sum, the question here for the Court is whether the defendant ought to be rewarded for having made the most of a fortuitous set of circumstances – that other defendants would never have available – through the imposition of a non-guidelines sentence.

The Government concludes that the Court should reject a non-guidelines sentence and impose a sentence at the bottom of the guidelines range. Under 18 U.S.C. § 3553, the Court must consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as to "afford adequate deterrence to criminal conduct" by the public. Here, the defendant engaged in a serious offense. He was deliberately and willfully involved with narcotics traffickers, despite a lengthy prior criminal history. His rehabilitative efforts do not retroactively negate the seriousness of his criminal conduct. For that conduct, a substantial prison term is warranted as just punishment and as a deterrent both to the defendant in the future, to other potentially recidivist offenders and to the public at large.

The Government is also mindful that the Court must take into account the history and characteristics of the defendant in fashioning an appropriate sentence. However, the Government believes that this already has been taken into account in the guidelines range that has resulted from the parties' plea agreement. By agreeing to a phone count, the defendant, a career offender, capped his sentencing exposure at 48 months. This was a substantial factor in the plea bargain as the parties' anticipated that defendant potentially qualified for treatment as a career offender and the Government believed that defendant's efforts at

13

rehabilitation were deserving of some consideration in the plea bargaining process.[4]  Beyond that, imposition of a more lenient non-guidelines sentence simply because the defendant was able to reap benefits from a fortuitous group of circumstances that other career offenders could not risks undermining the consistency that is a hallmark of a fair justice system.

   In short, Government respectfully believes that the defendant's background does not justify any further leniency from the Court outside the stipulated guidelines range.  Indeed, a sentence within at the bottom of the guidelines range strikes an appropriate balance between the defendant's history and background, the nature of the offense and the defendant's role in the offense.  The Government does not believe that there is any basis for a non-guidelines sentence.  The Government believes that a one year period of supervised release (the maximum possible) is appropriate.

---

[4] Upon review of the intercepted calls, the Government also believed that the readily provable drug quantity was at least 100 but less than 200 grams of cocaine.

Finally, the Government does not take any position with respect to a fine and respectfully leaves the imposition of a fine to the discretion of the Court.

                          Respectfully Submitted,

                          KEVIN J. O'CONNOR
                          UNITED STATES ATTORNEY


                          S. DAVE VATTI
                          ASSISTANT U.S. ATTORNEY
                          450 MAIN STREET, ROOM 328
                          HARTFORD, CT 06103
                          860-947-1101 X49
                          Fed. Bar No. ct11957

**<u>CERTIFICATION</u>**

This is to certify that a true copy of the foregoing has been faxed and sent via United States Mail, first class postage pre-paid on the 6th day of February 2006 to:

Bethany Phillips, Esq.
11 Franklin Square
New Britain, CT 06051

_____
S. DAVE VATTI
ASSISTANT UNITED STATES ATTORNEY