UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

JOSE TIRADO

NO. 3 : 02 CR 4 (AWT)

FEBRUARY 7, 2006

### DEFENDANT'S SENTENCING MEMORANDUM

**Introduction**

The defendant, Jose Tirado, by and through the undersigned counsel, hereby submits the following sentencing memorandum for the Court's review and consideration in connection with his sentencing, which is currently scheduled for Thursday, February 9, 2006, at 10:00 AM, before the Hon. Alvin W. Thompson.

**Facts**

On August 3, 2005, Mr. Tirado pleaded guilty to Count One of a Substitute Information charging him with Use of a Telephone to Facilitate a Narcotics Felony, in violation of Title 21 U.S.C. §§ 841(a)(1) and 843(b), an offense, which occurred on or about **December 16, 2001**.

Mr. Tirado executed a plea agreement with the government on **August 3, 2005**. The plea agreement set forth certain parameters, which Mr. Tirado agreed to be

bound by. Included in this plea agreement, was an estimated calculation of Mr. Tirado's sentencing guidelines range, which the parties estimated to be 24-30 months.

As evidenced in his Presentence Report, the United States Probation Office has calculated Mr. Tirado's guidelines range at 41-48 months[1]. The United States Probation Office has determined that Mr. Tirado should be classified as a career offender, based on two of his previous convictions. In the plea agreement, both the defendant and the government agreed that neither party would move for a departure or adjustment. However, the plea agreement was devoid of any language, which prevented Mr. Tirado from seeking a non-guidelines sentence.

**Background Information**

Jose Tirado is a 36-year-old male who grew up in a crime-infested section of Brooklyn, New York. He was raised by his mother, after his father abandoned the family. Each day, not only did Jose have to struggle to protect the few possessions he had, but his family also struggled to survive. Eventually, his mother moved the family to Connecticut, where she thought her family would have a better life style.

It is here, where Jose met his girlfriend, who eventually gave birth to his daughter, Janet. Today, Janet is eight-years-old, and still resides in New Britain. Even though Jose moved to Florida a few years ago, Jose still has remained an important influence in his daughter's life.

---

[1] This guidelines range has a ceiling of 51 months. However, as the instant crime is punishable by a statutory maximum sentence of 48 months, the ceiling is therefore a default range of 48 months.

In fact, Mr. Tirado was in Connecticut to visit his daughter, when he was arrested for the offense, which has brought him before this Court. He was taken totally by surprise and his life was turned upside down.

While his case was pending, Jose attended a number of drug treatment programs. Initially, he began his counseling in the Evening Treatment Program at Wheeler Clinic. The program consisted of four-hour meetings three nights per week. **(See Exhibits A and B).** Buttressing this treatment, were the AA sessions Jose attended during the course of his Wheeler Clinic counseling.

Following his completion of the Evening Treatment Program, Jose started attending the Relapse Prevention Group, also given at Wheeler Clinic. This treatment included a minimum of 12 weeks of treatment, which Jose attended at least once a week for an hour and a half. One of Jose's therapists, Ms. Gina Vice, documented Jose's attendance and participation in a letter dated October 18, 2005:

> Mr. Tirado's participation in group has been excellent. He is open to feedback and is active in providing others with feedback as well. Mr. Tirado denies any substance use and to date, all tox screens have been returned as negative for all substances. Upon completion of his 12th RPG session, Mr. Tirado requested additional sessions to further support his recovery efforts while awaiting sentencing for his upcoming court case. Based on his level of motivation at this time, active participation in group and negative toxicology screens, "the prognosis is good for continued personal growth and overall recovery." **(See Exhibit C).**

Ms. Vice wrote a letter dated November 23, 2005 to Ms. Kattya Lopez at U.S. Probation verifying that Jose had completed the Relapse Prevention Group at Wheeler Clinic successfully. In the letter she informed Ms. Lopez that,

- 3 -

Following his 12th session, Mr. Tirado volunteered to attend additional groups to support his recovery efforts given the additional stressors of pending incarceration. He was open to exploring reality of these events and **was able to accept personal responsibility for his actions**. He was active in attending at least 2 AA meetings per week and reported a continued interest in attending following this episode of treatment. All tox screens were returned as negative and this is consistent with his self-report of no use while in treatment. Overall, Mr. Tirado appears committed to his recovery and continued personal growth. **(See Exhibit D).**

Due to his progress, motivation, and inspirational story, Jose was asked by his previous counselor at the Intensive Outpatient Treatment Program, Diana Gay, to attend and speak at a meeting as an alumnus.

In 1989 Jose tried to help himself with his drug addiction. He recognized that he was addicted to cocaine. On July 14, 1989, he voluntarily admitted himself into Connecticut Valley Hospital for this addiction. Unfortunately, his stay only lasted six days, which was not enough time for him to have begun serious recovery.

On July 20, 1989, Jose was discharged. Of note, was Dr. J. Wierzbinski's prognosis of "poor." **(See Exhibit E).** Certainly, if one is relating Jose's prognosis in 1989, the doctor was correct in this assertion. For only three months later, Jose was arrested for the offenses of Reckless Endangerment and No Pistol Permit in New Britain. Sadly, even in 1991, the working prognosis of "poor" would have been accurate. In 1991, Jose was arrested for the two offenses that arguably could have the court declare that he is a career offender for the purpose of this sentencing.

When Jose was discharged from his parole on December 19, 1997, he managed to stay out of trouble until he committed the instant offense. Finally in 2002, Jose knew that he needed to remove himself from the very environment that was

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

bringing him down. Jose moved to Florida and obtained employment in an apprenticeship program to learn how to install and repair air conditioning systems.

Mr. Tirado has a tremendous amount of family support. His sister and brother in law immediately opened their home to Jose following his arrest. Not only did they allow Jose to reside with them during the pendency of this case, but also posted a real estate bond for him.

Jose's friends echo this support as well. In the eleven letters that are appended to this sentencing memorandum, it becomes clear how hard Jose has worked to regain control of his life and his addiction. Not only does he have the support of his sister and her husband, but also from his daughter's mother and his fiancée in Florida, who anxiously awaits his return knowing full well it could be years away. **(See Exhibit F).**

Today, the working prognosis that Jose was given in 1989, is not commensurate with his actions and commitment to recovery.

**Application of U.S.S.G. 4B1.1**

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. 4B1.1.

Mr. Tirado has two convictions, which the Office of U.S. Probation deems to be predicate offenses that therefore, classify him as a career offender under the Sentencing Guidelines. Mr. Tirado was arrested for the crime of Sale of Narcotics and

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

Assault in the 2nd Degree with Firearm on 5/27/1991. However, his criminal history reflects that both crimes occurred on separate occasions. He was sentenced for both offenses on the same day, before the same Judge, having received concurrent sentences on both offenses. The defendant has argued that these offenses should be classified as related offenses under the Sentencing Guidelines.

> Prior sentences are not considered related if they are for offenses that were separated by an intervening arrest (i.e. the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. See U.S.S.G. 4A1.2, Application Note 3.

Because these crimes occurred more than seven years ago, there are no records available to counsel that will illustrate what happened at Jose's sentencing other than the lengths of the sentences, which were reported to the National Crime Information Center (NCIC).

The circuit is replete with case law, which sets forth the position that Jose's offenses should not be considered related simply because he was sentenced for two crimes, before the same judge, at the same time. Although the holding does not support the defendant's position in the instant case, the language in the decision set forth in *United States v. Joseph*, 50 F.3d 401 (7th Cir. 1995), is worthy of note.

In *Joseph,* the Court having determined that there was no formal order of consolidation for the defendant's offenses, counted them separately for sentencing purposes. However, the Court did engage in an analysis concerning why one piece of paper (an order of consolidation) should affect the lengths of a defendant's sentence.

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

> The government has not explained to us why everything must depend on the presentence of an order. Consider the following two pairs of cases. On both pairs a defendant is given concurrent sentences of three years on the same day for crimes X and Y committed six months apart, but in one pair there is a formal order consolidating the cases and in the other there is not. On the government's view, in computing the criminal history of the first defendant the district judge is to count one sentence of three years but in computing the criminal history of the second defendant he is to count two sentences each of three years. Is it a senseless difference? To answer that question, one would like to know why the two cases had been consolidated. *Id.* at 403.

To engage in this analysis further, one must determine what consolidation means. In Connecticut courts, a formal order of consolidation is rarely, if ever, given. However, cases are routinely transferred from geographical area to geographical area. In fact, there is a statute that governs such practice. C.G.S. § 51-353a states that:

> Cases pending on the criminal docket of the superior court in any geographical area or judicial district may, with the consent of the accused and the state's attorney for such judicial district, be transferred to the criminal sessions of said court in any other judicial district or may be transferred to any other courthouse with the judicial district.

In 1977 this statute was amended. The former language of the statute read as follows:

> For the purpose of consolidating cases involving the same accused, cases pending in the criminal sessions of the court of common pleas in any geographical area may be transferred to the criminal sessions of the superior court for any county or judicial district, provided the accused, the prosecutor for such geographical area and the state's attorney for such county or judicial district consent to such transfer. See P.A. 77-452, § 35 (1977).

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

In Jose's case, the vagaries of his prior sentencing, should not control the court's ability to treat the offenses in a manner that does not categorize the defendant as a career offender.

**Argument in support of a non-guidelines sentence.**

Mr. Tirado requests that the Court impose a non guidelines sentence predicated on the decision set forth in the case of the *United States v. Booker*, 125 S. Ct. 738 (2005).

Title 28 U.S.C. § 991 sets forth the purpose of the United States Sentencing Guidelines Commission. The Commission established the Sentencing Guidelines to promote fairness in sentencing, i.e. to make sure that defendants convicted of similar crimes, with similar criminal histories were sentenced to similar punishments. In essence, a form of sentencing due process. The Commission wanted to,

> provide certainty and fairness in meeting the purpose of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices . . .

The Court is now faced with the task of sentencing Mr. Tirado to a sentence that is "not greater than necessary," but that will comport with the factors set forth in 18 U.S.C. § 3553.

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

A District Judge has one of the most difficult jobs in sentencing defendants. This fact was laid out in an article written by Judge Reuben Castillo, a U.S. District Judge and Vice Chair of the U.S. Sentencing Commission.

He was instrumental in the enactment of the Federal Sentencing Guidelines. He writes,

> I also believe that judges should not see the guidelines as a "straightjacket." Instead, they are exactly what they are called, a set of guidelines that are the starting point for the difficult and human sentencing process. There is no question that judges have less power at sentencing now than before the enactment of the guidelines. Judges who were able to participate in pre-guideline sentencing may occasionally miss the old days. Yet, all is not lost. The individual wearing the judicial robe still plays the most important role at sentencing. Perhaps that is why, even after 15 years of usage, there remains a great deal of resistance to the guidelines and a false expectation, or at least a faint hope, that someday lightning will strike, and the guidelines will be abolished.

Abolished they are not; the guidelines are here to stay, at least as a reference point for the judges. Ironically enough, the word "straightjacketing" is exactly what is happening to Jose in this case. Due to two prior convictions, for which he was arrested, convicted, and sentenced, on the same day, he is being elevated in career offender status. Starkly absent from the discussion is whether or not Jose ever received any confinement for one offense before committing the subsequent crime. Rather, he is being categorized as a "career offender" merely because of the chronology of the offenses.

Of Jose's three co-defendants, two have completed their federal sentences on this charge by now. In fact, Andre Brackett was released on March 12, 2004. In the interim, while residing in Florida, Jose has been gainfully employed, while studying

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

and training to receive his air conditioning installation license, clearly demonstrating his assimilation back into society. Years have passed; it is possible that Jose would have already finished his sentence. He did not flee the jurisdiction. Although, he was well on his way to improving his life, he must now face the past again.

In applying the principles of fairness in sentencing to Mr. Tirado's case, it would seem unjust to sentence him to the period of incarceration "recommended" by the Sentencing Guidelines. The only reason Jose is potentially a career offender is because he was arrested for two crimes on the same day. Even if these two cases were not related, but consolidated instead, the cases would be deemed related under the Guidelines.

It does not seem just that he receive a more severe sentence for crimes, which were resolved on the same day. The impetus behind elevating a defendant to career offender status was to punish defendants that had been convicted of previous crimes more harshly. Mr. Tirado never received the effect of incarceration on one crime before committing the second.

Mr. Tirado does not deny that his criminal history is alarming. What he does know is that his crimes were motivated by his drug habit. The habit that has cost him many years of his life, and presently stands to cost him more. Yes, it is happenstance what occurred with Jose's original warrant. Perhaps he received the benefit of such mistake. However, who is to say what could have or would have happened with his case 5 years ago.

- 10 -

What is important to underscore is the progress and the developments that Jose has made in the meantime. This is certainly a factor that the Court can take into consideration when determining whether it will award Mr. Tirado the benefit of a non guidelines sentence.

Jose has made tremendous strides in dealing with his addiction to cocaine. This will be a lifelong battle that he will have to face each day. Because of this case, Jose may have found strength and support through his family members and friends, that he previously was not aware were so strong.

Aside from his conviction for breach of peace in 1997, it seemed that Jose had deserted his criminal way of life. Jose's criminal lifestyle is far removed from his present state of mind today. However, he will continue to be reminded of the past each day while he is imprisoned and away from his family and loved ones.

**Conclusion**

Jose is asking the Court to impose non-guidelines sentence, below his advised guidelines range of 41-48 months.

Defense counsel will further address the court at the time of sentencing.

Respectfully submitted,
Defendant, Jose Tirado

By_____
Atty. Bethany L. Phillips
FedBar # ct19802

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

## **CERTIFICATION**

I hereby certify that on 2/7/2006, a copy of the attached was served in accordance with the applicable Rules of Practice and/or Procedure on the people and/or entities listed below.

DEFENDANT

By _____

Atty. Bethany L. Phillips

AUSA David Vatti, U.S. ATTORNEY'S OFFICE   (Government)
    450 Main Street,  Hartford  CT  06103

Mr. Jose Tirado
    44 Home Terrace,  East Hartford  CT  06108

Hon. Alvin Thompson, U.S. DISTRICT COURT
    450 Main Street, Clerk's Office, Hartford  CT  06103

Officer Mark Myers, U.S. PROBATION OFFICE
    157 Church Street, 22nd Floor,  New Haven  CT  06511