UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:02CR00004 (AWT) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE TIRADO | : | MARCH 6, 2006 |

**THE GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States hereby submits this supplemental brief regarding the following two issues raised by the Court in an Amended Notice to the Parties and at the initial sentencing hearing conducted on February 9, 2006: (1) whether the defendant qualifies for a downward departure based on pre-arrest and post-arrest rehabilitative efforts; and (2) whether the defendant's status as a career offender overstates the seriousness of his criminal history or his likelihood of recidivism such that a downward departure is warranted.

For the reasons set forth below, the United States urges the Court to reject a downward departure on either ground.

**I. The Defendant's Rehabilitative Efforts Are Not Sufficiently Extraordinary to Warrant a Downward Departure.**

Much of the defendant's focus with respect to his pre-arrest efforts at rehabilitation is on his efforts to combat his drug addiction through a self-referral to Connecticut Valley Hospital

for treatment and in having moved to Florida in an effort to leave from which his problems stemmed.  In terms of his post-arrest efforts, the defendant emphasizes his gainful employment and the fact that he has thus far been successful in maintaining his sobriety.  In the Government's view, neither the pre-arrest efforts nor the post-efforts individually or in their totality are sufficient to warrant a downward departure.

In this circuit, a district court has the discretion to depart downward from the applicable Guidelines range on the basis of drug rehabilitation.  *See United States v. Maier*, 975 F.2d 944, 948 (2d Cir. 1992).  However, the Second Circuit has cautioned that "such programs, easily entered but difficult to sustain, cannot be permitted to become an automatic ground for obtaining a downward departure."  *Id.*  If a departure is to be based on a defendant's efforts at drug rehabilitation, those efforts must be "extraordinary."  *United States v. Bryson,* 163 F.3d 742, 747 (2d Cir. 1998).

In *Maier*, the Second Circuit Court of Appeals considered a departure based on a defendant's participation in an intensive drug treatment program that spanned approximately fifteen months. The Court emphasized the need for a careful inquiry into the circumstances surrounding the defendant's efforts at rehabilitation "including the nature of the defendant's addiction, the characteristics of the program she has entered,

the progress she is making, the objective indications of her determination to rehabilitate herself, and her therapist's assessment of her progress toward rehabilitation and the hazards of interrupting that progress." *Maier*, 975 F.2d at 948-949. Notably, the defendant in *Maier* engaged in an intensive methadone maintenance program, an in-patient detoxification program and psychoanalysis. Based on the defendant's extraordinary steps toward rehabilitation over a lengthy period of time, the Court upheld the departure.

Downward departures for rehabilitative efforts were also upheld in other cases where such efforts at rehabilitation spanned a substantial period of time. *See e.g. United States v. Cornielle*, 171 F.3d 748,750-751, 754 (2d Cir. 1999)(one level downward departure for extraordinary rehabilitation permitted for former member of a narcotics and fraud conspiracy, who, in the four years between the commission of the crime and his arrest, had returned to college, was maintaining a high grade-point average, and was working part time as a volunteer counseling persons infected with HIV); *United States v. Workman*, 80 F.3d 688 (2d Cir. 1996)(extraordinary rehabilitation departure affirmed where defendant voluntarily left a narcotics conspiracy, joined the military and honorably completed service).

On the other hand, merely taking initial steps towards rehabilitation does not support a departure. *See United States*

*v. Williams*, 37 F.3d 82, 86 (2d Cir. 1994)(attendance at 16 hours of a 40 hour drug education program and exhibition of a genuine desire to seek rehabilitative treatment in the future not sufficiently extraordinary to support departure); *United States v. Carpenter*, 320 F.3d 334, 343 (2d Cir. 2003)(defendant's assistance to new residents of a halfway house during his five months there and return to his previous employment does not warrant departure for extraordinary rehabilitative efforts).

Here, the facts do not support the *sua sponte* downward departure that the Court has taken under advisement. Whether rehabilitation is extraordinary depends on the defendant's starting point. *See United States v. Bryson*, 163 F.3d 742, 748-749 (2d Cir. 1998). Based on the facts set forth in the PSR and defendant's own representations, there is no question that defendant has had a long-term drug addiction. But, while defendant self-referred for drug treatment in 1989 following a conviction for possession of narcotics, he spent only seven days in treatment. Not only did he leave the program after a mere seven days, but he went right back to the drug world as evidenced by his 1991 conviction for sale of narcotics. While moving to Florida in an effort to change his environment was a laudable goal, that too did not result in defendant being able to kick his habit. By his own admission, the defendant regularly continued to use drugs while he was in Florida, which by implication means

he continued to associate with persons in the drug trade. The Government recognizes that defendant held gainful employment for some period of time while in Florida. But, this too has raised questions. It now appears that the initial letter purported to be from his supervisor in which the defendant was praised as reliable and hard-working is not genuine. In a new letter verified to have been submitted by the supervisor, only the dates of the defendant's employment are listed. Moreover, the supervisor emphasizes that after June 17, 2004, the defendant "NEVER" showed up or called again. This was eight months before his arrest in this case. Leaving gainful employment without any contact whatsoever with his employer does not reflect the responsible frame of mind of a person who truly was on a path to rehabilitation pre-arrest. Such behavior certainly detracts from any desire to label the defendant's pre-arrest rehabilitative efforts as extraordinary. In short, there is no evidence that the defendant took extraordinary strides over a substantial period of time to overcome a long-term addiction prior to his arrest in this case sufficient to justify a downward departure.

Defendant's post-arrest efforts do not justify a departure either. Following his pre-trial release, it appears that the defendant has participated in drug treatment, has been gainfully employed until going out on workers' compensation, has not failed any drug tests, has been current with child support payments and

has acted responsibly towards those that have housed him. But, his participation in a treatment program for the past year, as enthusiastic as it may be, is no more deserving of a departure than the defendant in *Williams* whose participation in a drug education program was found to be insufficient. The facts of this case fall well short of the long-term, intensive efforts made by the defendants in *Maier* and *Cornielle,* where departures were upheld and, indeed, are more analogous to *Williams* and *Carpenter*, where departures were rejected.

In taking this position, the Government by no means intends to denigrate the defendant's efforts here. His efforts are certainly commendable. But, the defendant has only done those things he is legally obligated to do by the conditions of his pre-trial release. Among the conditions imposed were substance evaluation and treatment, employment or active seeking of employment and drug testing. By working, attending drug treatment and not failing drug tests, the defendant has done nothing other than meet expectation and act in compliance with the conditions of his pre-trial release. While he has made child support payments, he has a legal duty to do so. Simply meeting expectations does not rise to the level of "extraordinary" efforts. To borrow from *Carpenter*, the "achievement of the ordinary responsibilities of citizenship" is insufficient to support a departure. The defendant's post-arrest efforts here,

while praiseworthy, have not been substantial and sustained over such a period of time that they can be deemed extraordinary.[1]

Finally, to the extent that the Court determines that the letter from defendant's employer (which, if more accurately dated 2/16/05, appears to have been sent from Florida at a time when defendant was in pre-trial detention in this matter) is determined to have been fake, this too casts a shadow on defendant's claim that he deserves a departure for his post-arrest efforts at rehabilitation. The Government does not know the extent to which defendant had any involvement in the creation of this document. At this point, the Government does not have enough information to draw any particular conclusion as to how this document came into existence. However, it certainly raises doubts about whether the defendant's state of mind post-arrest is consistent with someone truly ready to be responsible and productive and makes justification of a downward departure for this defendant very difficult.

---

[1] In addition, the information set forth in the PSR does not even permit the searching inquiry required by *Maier* before such a departure can even be permitted. There is not enough information to determine the nature and extent of the defendant's addiction, if any. There has been no information provided regarding the characteristics of the treatment programs that he has been attending during his pre-trial release. There is no evidence of what the goals set forth by the program are and how compliance is measured. Other than the fact that defendant has not tested positive for drugs and is in compliance, very little is known about the treatment programs and the nature of defendant's participation in them. In short, based on the record before the Court, there is not enough evidence to satisfy the factual predicate required in *Maier* for the granting of such a departure. But, in any event, even if this information was known, satisfactory participation in a treatment program for one year as dictated by pre-trial release conditions does not amount to "extraordinary" efforts for departure purposes.

## II. Defendant's Status as a Career Offender Does Not Overstate the Seriousness of His Criminal History and His Likelihood Of Recidivism.

The Government recognizes that the version of Section 4A1.3 of the sentencing guidelines in effect at the time of defendant's commission of the instant offense did not place any restriction on the extent of a downward departure in criminal history category for a career offender.  The Government also acknowledges that the current version of the guidelines limits such a departure to one criminal history category.  The preliminary question for the Court is whether this difference in the breadth of the departure available in the guidelines in effect at the time of sentencing versus those in effect at the time of the defendant's commission of the offense raises any Ex Post Facto issues.  If it does, the guidelines in effect in December 2001 should be applied.  The Government was not able to locate any law from the Second Circuit Court of Appeals directly addressing this issue.  However, the published decisions the Government located from other courts uniformly hold that such a difference in the amount of judicial discretion available in considering a departure is a substantive change that disadvantages the defendant, thus implicating the Ex Post Facto clause.  *See e.g.* *United States v. Clark*, 8 F.3d 839, 844-845 (D. C. Cir. 1993)(where guidelines at the time offense was committed permitted a departure for lack of guidance as a youth, subsequent

amendment to guidelines prohibiting such a departure was a substantive change for ex post facto purposes, even though departure by its nature is discretionary and defendant had no assurance of receiving such a departure); *see also United States v. Moses*, 106 F.3d 1273, 1278 n.5 (6th Cir. 1997); *United States v. Schnepper*, 302 F. Supp. 2d 1170, 1183-1186 (D. Hawaii 2004); *United States v. Mateo*, 299 F. Supp. 2d 201, 205 (S.D.N.Y. 2004).

Assuming that the Court reaches the same conclusion and applies the 2001 guidelines, the Government believes that defendant's designation as a career offender is appropriate. The Second Circuit has held that there cannot be a generalized exception for "street level" drug dealers that allows departure from CHC VI or the career offender guideline. *See United States v. Mishoe*, 241 F.3d 214, 219 (2d Cir. 2001). However, a court "may consider whether to make a departure based on an individualized consideration of factors relevant to an assessment of whether CHC VI `significantly over-represents the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit future crimes.' U.S.S.G. 4A1.3. Such factors might include, for example, the amount of drugs involved in [defendant's] prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in CHC VI." *Id.* at 218-219.

Here, consideration of these factors weighs against any downward departure. Defendant's criminal history has spanned thirteen years and includes a variety of offenses. First, he was convicted in 1988 of possession of narcotics for which he was sentenced to time served and a lengthy period of probation. This period of incarceration did not nothing to deter defendant from future criminal activity as he was arrested in 1989 and convicted of charges of reckless endangerment and carrying a pistol without a permit. As a result, he spent another 3 years in jail. This offense was committed while he was on probation for the 1988 narcotics conviction. One would have expected that a second episode of incarceration would have been sufficient to set the defendant straight. On the contrary, less than one year after being released, defendant sold cocaine to a police informant in a controlled transaction. While the amount sold to the informant may have been small, the informant reported that the defendant pulled the cocaine from a large baggy containing "chunks" of cocaine. Clearly, at this stage, defendant was a drug dealer. In light of the fact that this conduct occurred after defendant already had two prior felony convictions for which he had served a significant period of incarceration, the seriousness of this offense cannot be overlooked. Indeed, given the nature of the offense and defendant's prior history, this conviction is appropriately considered a predicate for career offender status.

Approximately one month later, the defendant committed yet another offense that was wholly different in character from his drug offenses. This offense involved a serious risk of injury to another person when defendant pumped a shotgun blast into a moving car. Coming well after the defendant had served time for prior felonies and given the callous indifference to violence he displayed in committing this offense, it too cannot be shrugged as merely a youthful indiscretion. While defendant argues he did not have the benefit of incarceration between the two offenses in 1991, he had already served significant time in jail as a result of his 1988 and 1989 convictions. Clearly that did not deter him. Given his age and prior history, it cannot be credibly argued that defendant required a jail sentence following the sale of narcotics incident to trigger the conclusion in his mind that firing a shotgun at another driver could cause serious injury or even death and to deter him from such conduct.

In any event, to the extent that defendant needed further imprisonment as a deterrent, he served approximately 5 years on these 1991 charges. He was discharged from parole on December 19, 1997. Four years later, defendant committed the instant offense by facilitating a co-defendant's distribution of cocaine. In sum, defendant's history over this thirteen year period doesn't overstate his history; it accurately reflects a pattern of recidivism on defendant's part. These were not petty

11

offenses.  They involve acts of violence and narcotics trafficking.

Defendant now claims that his behavior since 2001 shows that his criminal history is overstated and that he is not likely to commit future crimes.  That claim has no merit.  First, since 2001, defendant clearly has continued in criminal activity by illegally and regularly using (and by implication regularly acquiring) drugs right up until the time of his arrest in this matter.  Second, while the Government notes that defendant may have been an addict, defendant did not make any efforts to avail himself of treatment since December 2001 until mandated to do so by the terms of his pre-trial release in this matter in February 2005.

In essence, the defendant's argument boils down to a claim that the manner in which he has conducted himself during pre-trial release should give the Court confidence that he will not commit any future crimes and that his prior history is not a true reflection of who he is at the present time.  The Government believes that based on the defendant's track record over the past thirteen years and the questions surrounding the forged employer's letter, defendant's compliance with conditions of release under court supervision alone cannot give the Court any degree of confidence that the defendant is anything but a career offender and that he will not repeat the same recidivist pattern

of behavior if he is treated leniently.  The Government maintains that while defendant has shown some promise over the past year, it is not enough to warrant overlooking his past and to justify a downward departure.  A sentence at the bottom of the applicable guidelines range adequately addresses the defendant's history and the need for a deterrent to both him and the public and yet ensures that the defendant has a meaningful opportunity for a productive life after that sentence is served.

                                 Respectfully Submitted,

                                 KEVIN J. O'CONNOR
                                 UNITED STATES ATTORNEY


                                 S. DAVE VATTI
                                 ASSISTANT U.S. ATTORNEY
                                 450 MAIN STREET, ROOM 328
                                 HARTFORD, CT 06103
                                 860-947-1101 X49
                                 Fed. Bar No. ct11957

**<u>CERTIFICATION</u>**

This is to certify that a true copy of the foregoing has been faxed and sent via United States Mail, first class postage pre-paid on the 6th day of March 2006 to:

Bethany Phillips, Esq.
11 Franklin Square
New Britain, CT 06051

_____
S. DAVE VATTI
ASSISTANT UNITED STATES ATTORNEY