UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

NO. 3 : 02 CR 4 (AWT)

V.

MARCH 14, 2006

JOSE TIRADO

### DEFENDANT'S REPLY TO GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The defendant, Jose Tirado (Jose), by and through the undersigned counsel, hereby submits the following response to the Government's Supplemental Sentencing Memorandum dated March 6, 2006.

The Government's Supplemental Sentencing Memorandum raised two issues that defense counsel felt warranted a written reply. The issues are:

1. The contents of a letter written by Steve Karpf of R.J. Vann, and the dates of the defendant's employment related thereto.

2. The treatment and guidelines of the programs the defendant completed at Wheeler Clinic.

**1. Letter from Steve Karpf at R.J. Vann.**

On 2/16/2005, counsel presented the attached letter to Judge Smith in support of her argument for her client's pretrial release. **(See Exhibit A)**. Subsequently, prior to the first part of Jose's sentencing, it was discovered that this letter was not

legitimate. Obviously, counsel was and continues to be concerned about the inference that may be drawn against her client because of this letter. Originally, counsel was planning to address this issue orally at the second portion of Jose's sentencing. However, due to various issues raised by the government, and in light of what counsel has been able to determine of late, she felt that her client's interests would best be served by addressing this in a reply brief.

In conjunction with the concern about the veracity of the aforementioned letter, is the Court's concern over why Jose left the employ of R.J. Vann. Two facts are certain about the letter submitted to the Court on 2/16/05. 1. Jose's employer did not write this letter and 2. Jose did not write the letter either. Jose was in federal custody at the time counsel received this letter and could not have written same.[1] Additionally, counsel spoke to her client about why he left his position with R.J. Vann and did not return.

Jose indicated that during the summer of 2004, his ex-girlfriend, Jeanette Cartagena, was experiencing some problems obtaining day care for their daughter, Janet. As such, she asked him to come to Connecticut to temporarily care for Janet until she could find a suitable day care. Shortly after Jose arrived in Connecticut, Ms. Cartagena found an appropriate day care for their daughter and no longer needed Jose's assistance. During this conversation, Jose also informed counsel that Mr. Karpf was aware of the reason why he left his position at R.J. Vann. After speaking with Jose, counsel attempted to verify what he said.

---

[1] It was discovered by counsel, that Jose's ex-girlfriend authored this letter. There is a dispute as to why she wrote same.

In late February of this year, counsel was able to make contact with Mr. Karpf. During this conversation, she asked him to write a letter confirming her client's dates of employment. On February 24, 2006, Mr. Karpf faxed a letter confirming these dates. **(See Exhibit B).**

After receiving said letter, counsel contacted Mr. Karpf again, because the letter was devoid of information about the quality of Jose's work during his employment at R.J. Vann. More importantly, after speaking with her client, counsel wanted Jose's employer to document the fact that he knew why Jose left his company in the summer of 2004. Mr. Karpf returned counsel's message on March 8, 2006, at approximately 2:48 PM. During this telephone conversation, counsel asked him about the quality of Jose's work during his employment at R.J. Vann.

In response Mr. Karpf said, "He must have been worth something or I would not have rehired him." She also inquired if he was aware as to why he left when he did. Mr. Karpf commented that, "Up until the last three weeks he was fine, until his ex-girlfriend or ex-wife in Connecticut started making him crazy. I told him not to go because no man or woman is worth that." When counsel asked Mr. Karpf to document this in a letter, his response was, "I am not going to keep writing back and forth. I am not getting involved in all that."

Although Mr. Karpf was unwilling to document what he said in writing, Jeanette Cartagena, signed an affidavit confirming what Jose said. **(See Exhibit C).**

-3-

## 2. Treatment guidelines at Wheeler Clinic.

In its Supplement Sentencing Memorandum, the government noted that there was no information placed before the court regarding the goals of the treatment programs [Jose] attended during his pretrial release or how compliance in the programs is calculated. (See Government's Supplemental Sentencing Memorandum, Page 7 Footnote 1). In response to this statement, counsel contacted Wheeler Clinic in an effort provide this Court with documentation concerning the guidelines and directives of these programs.

When a client enters any program at Wheeler Clinic, s/he must agree to abide by certain guidelines. Wheeler Clinic has reduced these guidelines to writing and placed them in the form of a contract. Each client must sign same and the contract is placed in their file. Each program has its own contract. Although some guidelines are common throughout each program at Wheeler Clinic, some programs have individualized guidelines, which are unique to that program.

As Jose attended two programs at Wheeler Clinic, the Intensive Outpatient Treatment Program, and the Relapse Prevention Group, he signed two contacts. **(See Contacts attached as Exhibits D and E respectively).**[2]

After signing a contract, the client is given a treatment plan. Attempts were made to obtain copies of Jose's treatment plan, however, Wheeler Clinic is not willing to release same. This fact is documented in a letter date March 13, 2006, from Dr. Gina Vice at Wheeler Clinic. **(See Exhibit F).**

---

[2] As Wheeler Clinic will not disclose Jose's records, copies of blank contracts have been provided for the Court's edification.

As reported in the Presentence Report, Jose began using drugs at age 15 / 16. Jose has been drug fee since his arrest on the instant charges in February 2005. However, prior to that, Jose had been using drugs for 20 years. Cocaine was his drug of choice. While he may have had sporadic periods of sobriety during this 20 year time span, there is no question that Jose had and will continue to have a very serious addiction to drugs. Any addiction that lasts as long as Jose's did, is without question an uphill battle for the addict each day. His efforts at Wheeler Clinic were remarkable. As noted by his counselor, "Jose requested additional time in treatment to support his recovery and attended more than the required number of sessions. [His] participation in group was excellent. All tox screens have been returned as negative. He presented a well thought out relapse prevention plan at the termination of treatment. Additionally, in support of his recovery efforts, he agreed to speak about his experiences with substances and efforts in recovery in the Intensive Outpatient Program." **(See Exhibit F).**

In short, Jose went above and beyond what was expected and required of him during his pretrial release. Jose also maintained a full time job during this time period, until he was hurt in back to back motor vehicle accidents. Its is supplemental brief, the government noted that a defendant should not be rewarded acting how he is, "legally obligated to act." In Jose's case, yes, he acted how he was legally obligated to act during his pretrial release. But he also went further. He attended more groups than he was required to attend. He was asked back to Wheeler Clinic to speak as an alumnus about his experiences as an addict and his recovery process. He attended

-5-

additional AA and NA meetings, and requested further time in drug treatment. This is not the case of someone who is just doing the minimum to get by. This is the work of a person who is dedicated to conquering a serious drug addiction.

The government cited to the case of *United States v. Williams*, 37 F.3d. 82 (2nd Cir. 1994). This case is inapposite to the case at hand. In *Williams*, the court remanded the case for resentencing, finding that the defendant's efforts were not enough to support a downward departure for his extraordinary rehabilitative efforts.

> Williams simply attended a drug *education* program. Clearly, this was not the rehabilitative effort we contemplated in *Maier*. In *Maier*, we considered a departure based on a defendant's participation in a drug treatment program where the district court examined all of the circumstances surrounding the defendant's efforts at drug rehabilitation, "including the nature of the defendant's addiction, the characteristics of the program she has entered, the progress she is making, the objective indications of her determination to rehabilitate herself, and her therapist's assessment of her progress toward rehabilitation and the hazards of interrupting that progress." *Id.* at 86.

Based on the information set forth above, it is clear that Jose did more than simply attend a drug education program. As such, Jose would assert that his efforts are more akin to that of the defendant in *Maier*.

Jose maintains that the Court should impart its initial consideration of awarding him a downward departure for his pre and post rehabilitative efforts or under the auspices of U.S.S.G. § 4A1.3, or a combination of both.

Respectfully submitted,<br>
Defendant, Jose Tirado<br><br>
By_____<br>
Atty. Bethany L. Phillips<br>
FedBar # ct19802

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

## CERTIFICATION

I hereby certify that on 3/14/2006, a copy of the attached was served in accordance with the applicable Rules of Practice and/or Procedure on the people and/or entities listed below.

DEFENDANT

By _____
Atty. Bethany L. Phillips

AUSA David Vatti, U.S. ATTORNEY'S OFFICE   (Government)
    450 Main Street,  Hartford  CT  06103

Mr. Jose Tirado
    44 Home Terrace,  East Hartford  CT  06108

Hon. Alvin Thompson, U.S. DISTRICT COURT
    450 Main Street, Clerk's Office, Hartford  CT  06103

Officer Mark Myers, U.S. PROBATION OFFICE
    157 Church Street, 22nd Floor, New Haven  CT  06511



2/16/04

To Whom It May Concern:

This letter is to verify that Jose Tirado has been working for our company for the past 2 years on & off.

Mr. Tirado has been a very reliable & hard working employee & we would consider it a great loss if we were to loose him.

Sincerely,

Steve Korz



"Exhibit A"

02/16/2005 WED 11:03  【JOB NO. 5486】  ☑002

# RJ VANN MECHANICAL
### Plumbing • Air Conditioning • Fire Sprinklers
State Cert. #'s: #CFC025549, #01214100011986, #CAC056746
An Independent **LENNOX** Dealer

February 24, 2006

To Whom It May Concern:

This is to verify that Jose Tirado worked for R.J. Vann Mechanical Corporation, Supervisor, Steve Karpf.

He started working 7/22/02 and he resigned 4/10/03 and then he was re-hired 7/13/03 and from 6/17/04 he NEVER showed up or called again.

*Steve Karpf*
Steve Karpf, A/C Supervisor


FILE

2970 CARGO STREET • FORT MYERS, FL 33916 • (239) 337-4011 • FAX (239) 337-2298 • www.rjvannmech.com

"Exhibit B"

TOTAL P.01
02/24/2006 FRI 8:33 [JOB NO. 7181] ☑001

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

NO. 3 : 02 CR 4 (AWT)

v.

JOSE TIRADO

MARCH 13, 2006

### AFFIDAVIT OF JEANETTE CARTAGENA

The Affiant, JEANETTE CARTAGENA, after being duly sworn on oath, deposes and says:

1. I am over eighteen years of age and respect the obligation of an oath.
2. I have personal knowledge of the matters stated in this affidavit.
3. Jose Tirado and I have a daughter, Janet. She is eight years old.
4. I have primary custody of Janet. However, during the summer of 2004, I was having trouble finding daycare for Janet. Because of this, I asked Jose to come to Connecticut so that he could care for Janet. I did this so I would not lose my job. I had no one else to call upon at this time.
5. That summer, Jose came to Connecticut to care for Janet.
6. However, approximately one month later, I resolved my difficulty in finding day care for Janet and I no longer needed Jose to care for her full time. He then returned to Florida.
7. Jose loves his daughter and is a good father to her.
8. He has always paid his child support. I know that he would do anything for her, as he demonstrated by his willingness to come to Connecticut that summer and care for her.

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051-2604 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

"Exhibit C"

I swear and affirm that the information contained in this affidavit is the truth.

_____
Affiant: JEANETTE CARTAGENA

Subscribed and sworn to before me on this 13th day of March, 2006.

_____
Commissioner of the Superior Court
~~Notary Public~~ Bethany L. Phillips

# EVENING TREATMENT PROGRAM FOR SUBSTANCE ABUSE
(860) 793-3500
24-Hour Helpline: (860) 747-3434

**Wheeler Clinic**
fostering positive change

Monday, Wednesday, Thursday
5:30 PM – 9:30 PM
*Thursday is Family Night*

Client Name _____

Medical Record # _____

___Diana Gay (Group Leader) 793-3573
___Cathy Corcoran (Case Manager) 793-3538

*In order to successfully complete treatment, I agree to the following:*

1. I will attend all scheduled program days. In case of illness or emergency, I will contact my group leader prior to the scheduled group time. I understand that I may be asked to provide a urine sample within 24 hours if I miss a treatment day. Unexcused absences may result in suspension or discharge from the program.
2. I will arrive sober and on time for all scheduled groups and remain until the end of the treatment evening.
3. I will remain **alcohol and other drug free throughout treatment**. (Any over-the-counter or prescription medications taken during treatment must be reviewed with staff, prior to use.) I also agree to refrain from "non-alcoholic" beverages and foods containing poppy seeds.
4. I will participate in all aspects of treatment, act with respect and will support other group members throughout treatment. I will work toward the agreed upon treatment goals I have set with my counselor and comply with the treatment recommendations. Length of stay is based on individual progress.
5. I agree to random supervised urine screens upon request. If I admit to using or a dirty urine is found, some referral sources require to be notified of this.
6. I will attend **at least 3** AA or NA meetings each week and provide written documentation.
7. I accept the responsibility for my co-payment or self-fee weekly. I understand that treatment may be suspended as a result of non-payment.
8. I agree to have a family member or significant other join me for **at least 3** scheduled family night groups on Thursday evenings. I will bring _____.
9. Confidentiality: What I see or hear other group members say or do, will stay here when I leave.
10. Staff will take appropriate action if I am in immediate danger of hurting myself or someone else, or if I share information about suspected child/elder abuse or neglect.
11. Upon completion of the Intensive Outpatient Treatment Program, I agree to continue with the Relapse Prevention Program.

*Failure to comply may result in discharge, or recommendations for a higher level of care.*

**** Please note Wheeler Clinic's policy on psychiatric appointments ****
Only clients who are actively engaged in treatment will be granted appointments with the psychiatrist. Should you stop attending group for any reason your psych appointment will be cancelled.

I have read and agree to abide by this treatment contract.

Client's Signature _____ Date: _____

Staff's Signature _____ Date: _____

Rev. 5-19-05

"Exhibit D"



# Relapse Prevention Group
(860) 793-3500
24-Hour Helpline: (860) 747-3434

**WHEELER CLINIC**
*Fostering Positive Change*

Client Name_____

Medical Record #_____

Group Beginning Date _____

**Program Day:**
___ Mondays: 7:00 – 8:30 PM (Gina)
___ Tuesdays: 12:00 AM – 1:30 PM (Judy)
___ Wednesdays: 5:30 – 7:00 PM (Dale)
___ Thursdays: 6:00 – 7:30 PM (Judy)

___ Judy Lydecker 793-3893
___ Dale Thielert 793-3586
___ Gina Vice 793-3734

*In order for me to get the most out of my treatment, I agree to the following guidelines upon entering the Relapse Prevention Group:*

1. I will attend all twelve group sessions. In case of illness or emergency, I will contact my counselor prior to the scheduled group time. **I understand that I am allowed up to two absences in 12 weeks (for emergency, illness or pre-approved by my counselor). If I miss more than two sessions, I will be asked to restart or will be discharged.**

2. I will arrive sober and on time for all scheduled groups and stay until the end of each group.

3. I will stay clean from alcohol and all mood-altering substances while enrolled in this program. In the event I relapse, I will inform my counselor and agree to process this in group. (Please inform staff prior to using any over the counter or prescription medication.)

4. I will attend a total of ____ AA or NA meetings each week.

5. I will participate in all group discussions and will act with respect.

6. I agree to random supervised urine screens while in this program. If I admit to using, or a dirty urine is found, some referrals sources require to be notified of this. I also agree to pay for the cost of any urine screens (exception: ABH/DCF clients).

7. I accept the responsibility for my co-pay/self-fee on a weekly basis. I understand that treatment may be suspended as a result of non-payment.

8. I agree to respect the confidentiality of other group participants and clients from Wheeler Clinic.

Failure to comply may result in suspension, discharge, or recommendations for a higher level of care.

_____
**Client's Signature**

_____
**Staff's Signature**

_____
**Date**

Rev. 9-10-03

"Exhibit E"



Wheeler Clinic
fostering positive change

March 13, 2006

Bethany Phillips
Advocates Attorney
Hartford, CT

> **REDISCLOSURE PROHIBITED**
> "This information has been disclosed to you from records protected by Federal confidentiality rules (42-CFR Part 2). The Federal rules prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose. The Federal rules restrict any use of the information to criminally investigate or prosecute any alcohol or drug abuse patient."

RE: Jose Tirado
D.O.B.: 07/13/69

Dear Attorney Phillips,

Per our conversation earlier, you were requesting information pertaining to Mr. Tirado's treatment at the Wheeler Clinic. After speaking with Ms. Lopez, (USPO), I am not authorized to provide you with any additional information than has already been provided.

I have been authorized to provide you with information regarding his attendance and participation in the Relapse Prevention Group. Mr. Tirado participated in 18 Relapse Prevention Group sessions from June 13, 2005 to November 21, 2005. Members of this group commit to at least 12 weeks of treatment, one time per week for an hour and a half. Individuals also agree to random tox screens and attendance at a minimum of one twelve step meetings per week. In addition, they gain knowledge and learn coping skills that will help them maintain their abstinence from all non-prescribed mood-altering chemicals. In that Mr. Tirado requested additional time in treatment to support his recovery, he attended more than the required number of sessions.

Mr. Tirado's participation in group was excellent. All tox screens have been returned as negative. He presented a well thought out relapse prevention plan at the termination of treatment. Additionally, in support of his recovery efforts, he agreed to speak about his experiences with substances and efforts in recovery in the Intensive Outpatient Program at the Wheeler Clinic. This is a program he completed prior to attending the Relapse Prevention Program. Mr. Tirado was also an active participant in AA/NA meetings, at least 1 time per week.

If you require any further information, please feel free to contact me at your convenience. I can be reached at (860) 793-3734.

Sincerely,

Gina Vice, Psy.D.
Psychotherapist
Wheeler Clinic

91 Northwest Drive · Plainville, CT 06062 · Tel: 860-793-3500 · Fax: 860-793-3520 · www.wheelerclinic.org

"Exhibit F"